IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JAMES BROWN, M.D.,<br>an Iowa Individual,<br><br>　　　Plaintiff,<br><br>vs.<br><br>MARC LINDER,<br>an Iowa Individual, in his individual and<br>official capacities,<br><br>　　　Defendant. | CASE NO. 3:21-cv-00065<br><br>**AMENDED COMPLAINT FOR:**<br><br>1) **FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)**<br><br>2) **COMMON LAW DEFAMATION BY IMPLICATION**<br><br>3) **COMMON LAW DEFAMATION PER SE**<br><br>4) **COMMON LAW DEFAMATION**<br><br>5) **COMMON LAW FALSE LIGHT INVASION OF PRIVACY**<br><br>6) **INUNCTIVE RELIEF**<br><br>**(JURY DEMANDED)** |

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff James Brown, M.D. (hereafter "Dr. Brown"), files this Amended Complaint and, demanding trial by jury, complains and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

　　　1.　　At all times material hereto, Plaintiff James Brown, M.D. ( "Dr. Brown") was a citizen of Johnson County, Iowa.

2.     At all material times hereto, upon information and belief, Defendant Marc Linder ( "Linder") was a citizen of Iowa.

3.     All acts alleged in this Amended Complaint occurred in Johnson County, Iowa.

4.     Defendant Linder removed this case from the Iowa District Court for Johnson County to this Court pursuant to 28 U.S.C. § 1441(c) and § 1446.

5.     Venue is proper pursuant to 28 U.S.C. § 1441(a) because this is the "district and division embracing the place where such an action is pending," and pursuant to  28 U.S.C. § 1391(b) and (c) because, on information and belief, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and has caused damage to Dr. Brown in this district and Defendant Linder is subject to personal jurisdiction in this judicial district.

## FACTS

6.     The First Amendment of the United States Constitution, as made applicable to the State of Iowa by the Due Process Clause of the Fourteenth Amendment, prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.

7.     At all material times hereto, Dr. Brown was a board-certified urologist at the University of Iowa Hospitals and Clinics (UIHC).

8.     At all material times hereto, Defendant Linder was employed by the State of Iowa as a Professor of Law at the University of Iowa College of Law.

9.     At all material times hereto, Defendant Linder was acting within the scope of his employment with the State of Iowa.

2

10.    At all material times hereto, Defendant Linder was acting under color of law, custom, and/or usage of the State of Iowa.

11.    Dr. Brown has been a practicing urologist for over 20 years.

12.    Dr. Brown is a recognized expert in the medical field of urology.

13.    Defendant Linder is not a medical doctor.

14.    Defendant Linder is not a board-certified urologist.

15.    Defendant Linder is not a recognized expert in the medical field of urology.

16.    Dr. Brown was asked by Swift Pork Company ("Swift") to provide testimony and a report in the case brought by the Labor Commissioner against Swift based on his knowledge of the medical literature and data, and his own training and experience regarding normal adult urination.

17.    As a result of his expertise, Dr. Brown was qualified to offer expert opinions pertaining to adult urination.

18.    Statements made by Dr. Brown in his testimony were limited to medical evidence regarding normal adult urination, including the frequency with which the normal adult urinates, the amount of time a normal adult can be expected to wait once they feel the urge to urinate, the conditions that might cause a person to urinate more or less frequently or that might affect a person's wait time.

19.    Dr. Brown provided testimony on whether Swift's policies on restroom breaks exposed employees to potential adverse health effects based on the medical evidence he offered.

20.     Dr. Brown made it clear while he testified under oath that his testimony was "limited to medical issues" and that he had not been asked to opine on whether the Occupational Safety and Health Administration (OSHA) standard on bathroom breaks had been violated or whether the Labor Commissioner's interpretation of the standard was appropriate.

21.     Dr. Brown testified truthfully in the Swift case.

22.     Dr. Brown testified under oath in the Swift case.

23.     The day before the hearing on the Swift case was set to begin, Defendant Linder registered a verbal complaint against Dr. Brown with Dr. Karl Kreder, the head of the Department of Urology at UIHC.

24.     In a series of emails that followed, Defendant Linder alleged that Dr. Brown had a conflict of interest due to, among other things, Dr. Brown's "self-confessed money-driven report, deposition, and hearing testimony on behalf of an Iowa (and Federal) OSHA-cited employer, which is trying to invalidate OSHA's enforcement of employees' right to use the toilet at work when they need to do so."

25.     This accusation by Defendant Linder was false.

26.     Defendant Linder had no role in the Swift case; nevertheless, Defendant Linder showed up at Dr. Brown's deposition and stood in the hallway, and Defendant Linder attended the hearing during Dr. Brown's testimony, wearing a t-shirt that said, "People Over Profits."

27.     The issue in the Swift case was whether Swift's restroom use policy, as written and applied, placed reasonable restrictions on employee access to restrooms consistent with the OSHA sanitation standard in 29 CFR 1910.141(c)(1).

28.     At the hearing, the administrative law judge (ALJ) qualified Dr. Brown as an expert witness on all matters relating to urology.

29.     The Labor Commissioner did not object to Dr. Brown serving as an expert witness and stipulated to his qualifications as an expert in urology.

30.     Dr. Brown was one of nineteen witnesses.

31.     Dr. Brown expressly testified that he had no opinion on whether the OSHA standard at issue had been violated by Swift.

32.     Dr. Brown expressly testified that he had no opinion as to whether or not OSHA's interpretation of the standard was appropriate.

33.     Dr. Brown expressly testified that his work in the case was limited to medical issues.

34.     The ALJ issued a decision in favor of Swift finding that Swift's implementation of its restroom use policy did not unreasonably restrict employee access to restrooms and that the Labor Commissioner failed to establish a violation under OSHA's sanitation standard in 29 CFR 1910.141(c)(1) occurred.

35.     The Employment Appeal Board affirmed the ALJ's decision on February 16, 2018.

36.     Dr. Brown's sworn testimony in the Swift legal proceeding is protected speech.

37.     Dr. Brown's sworn testimony involved a matter of public concern.

38.     As a result of Dr. Brown's participation in protected speech, including by providing truthful testimony in a legal proceeding, Defendant Linder took adverse action against Dr. Brown.

5

39.     Defendant Linder's adverse action included continuous, prolonged repeated, and multi-faceted retaliatory vendetta against Dr. Brown.

40.     In addition, in a front-page article published by the Waterloo-Cedar Falls Courier and Cedar Rapids Gazette on Sunday, July 28, 2019, Defendant Linder made false statements concerning Dr. Brown, including that Dr. Brown "testif[ied] about a standard that affects 100 million people," and, as such, "could have unleashed or helped to unleash terrible consequences for workers of Iowa."

41.     The July 28, 2019 articles identify Defendant Linder as "Marc Linder, a UI law professor whose focus is on labor law."

42.     Defendant's statement is false in its implication that Dr. Brown testified about the OSHA standard requiring employers to provide prompt access to bathroom facilities (that could have unleashed terrible consequences for 100 million workers) when Defendant Linder knows that Dr. Brown expressly testified that he had no opinion on whether the OSHA standard at issue had been violated by Swift, had no opinion as to whether or not OSHA's interpretation of the standard was appropriate, and that Dr. Brown's work in the case was limited to medical issues.

43.     In addition, on June 25, 2020, Defendant Linder published an article in The Daily Iowan attacking Dr. Brown.

44.     The Daily Iowan is a student-run independent newspaper of the University of Iowa.

45.     The June 25, 2020 article in The Daily Iowan identifies Defendant Linder in his capacity as an employee of the State, stating, "Marc Linder, UI Professor of Law."

6

46.     In view of, *inter alia*, Defendant Linder's front-page July 28, 2019 article and Defendant Linder's prior retaliatory conduct directed at Dr. Brown, it was clear to any reasonable reader that Defendant Linder was referring to Dr. Brown in the June 25, 2020 article.

47.     In the June 25, 2020 article, Defendant Linder wrote that Dr. Brown violated an "unambiguous[]" law on ethics and conflicts of interest for state employees who testify as expert witnesses.

48.     Defendant's statement is false in its implication that physicians like Dr. Brown who testify truthfully are unethical and have a conflict of interest when called to testify as an expert by a party against whom the State of Iowa is a party in an adversarial proceeding when Defendant Linder knows that providing truthful testimony based on one's expertise is not illegal or unethical.

49.     Defendant Linder's publication omits critical facts, including that he had previously been informed by UI College of Medicine Dean Dr. J. Brooks Jackson that "with respect to conflicts of interest, I checked with Dr. Brown and our COI compliance office, and Dr. Brown is currently in compliance with University policies specifically with respect to conflict of interest."

50.     Further, in the June 25, 2020 article, Defendant Linder refers to Dr. Brown as a "University of Iowa Hospitals & Clinics physician" who "had never even published a single scholarly article on urinary incontinence frequency/urgency."

51.     Defendant's statement is false in its implication that Dr. Brown was not qualified to testify as an expert in the Swift case when Defendant knows that Dr. Brown is a board-certified urologist, Dr. Brown had practiced in the field of urology

for over 20 years, Dr. Brown's qualifications were not challenged by any party in the proceeding, Dr. Brown's opinions were admitted into evidence without objection, and the ALJ found Dr. Brown's opinions credible and reliable—a fact demonstrated by the reliance upon which the ALJ placed on Dr. Brown's testimony.

52.    Defendant Linder's statement omits critical facts, including that Dr. Brown is a board-certified urologist, that at the time of the adversarial proceeding Dr. Brown had been a practicing urologist for over 20 years, and that Dr. Brown's opinions were based on a review of relevant literature and his own training and experience.

53.    In the June 25, 2020 article, Defendant Linder also characterizes Dr. Brown as a "hired gun for private-profit making defendants in cases prosecuted by state agencies."

54.    Defendant's statement is false in its implication that Dr. Brown is an expert is willing to deceive factfinders by testifying to whatever expert opinion that advances the hiring attorney's case theory when Defendant knows Dr. Brown's opinions were (1) limited in scope, (2) based on Dr. Brown's training and experience, (3) formed after a review of relevant literature, (4) were not challenged by any party, and (5) were determined to be reliable by the ALJ in rendering its decision.

55.    Defendant Linder has made additional retaliatory statements that falsely declare by implication and otherwise that Dr. Brown is unethical, Dr. Brown lacks the qualifications necessary to testify as an expert in urology, Dr. Brown subordinated ethics for his own financial gain, and falsely characterizing Dr. Brown's testimony in the Swift case, including but in no way limited to the following:

a. Dr. Brown wanted "to make America Great Again by helping his customer, JBS";

b. Dr. Brown wanted to make "workers urinate less and kill animals more"

c. Stating by implication that Dr. Brown provided false testimony for his own financial gain, stating "Maybe that view wasn't his at all, but merely the only one that JBS would pay him $500/$600 an hour to propagate, and his need to pay his kids' college tuition might have had him 'peddling' a different view on OSHA's side of the VERSUS"; and "Just as Brown's customer, JBS, hired a law firm from Virginia to represent it against Iowa OSHA, it was free to hire another non-expert urologist or an expert urologist from anywhere in the United States to be its expert witness on frequency/urgency—if, that is, any other urologist had been willing to subordinate her or his medical ethics to JBS/Swift's litigation defense needs."

56.    Defendant Linder used his position as a professor of law at the University of Iowa to retaliate against Dr. Brown.

57.    Defendant Linder used his position as a professor of law at the University of Iowa to convince others that his statements of and concerning Dr. Brown were credible, true, correct, and factual.

58.    Defendant Linder possessed state authority and purported to act under that authority when he retaliated against Dr. Brown.

59.     When Defendant Linder retaliated against Dr. Brown, he did not present himself merely a concerned professional or any other respected member of the community, but rather as a person acting under color of law.

60.     Defendant Linder used the instrumentalities and resources of the State of Iowa to facilitate his retaliatory conduct.

61.     Defendant Linder was compensated by the State of Iowa for his role in engaging in the retaliatory conduct to the extent the conduct was performed within the scope of his employment with the State of Iowa.

62.     Defendant Linder used the prestige of his official position with the University of Iowa to gain credibility with his audience.

63.     Defendant Linder used his official position with the University of Iowa to retaliate against Dr. Brown because he believed his position would carry more weight with those to whom he wrote and spoke, than if he were speaking merely in his personal capacity.

64.     Defendant Linder cloaked his retaliatory conduct under color of law.

65.     Defendant Linder disseminated retaliatory information in which he identified himself in the capacity of his employment with the State of Iowa.

66.     Defendant Linder brought to bear his influence as a professor at the University of Iowa on those to whom he wrote and spoke concerning Dr. Brown.

67.     Defendant Linder used his official tenure status to shield himself from the consequences of his retaliatory conduct against Dr. Brown within the University of Iowa.

68.     Defendant Linder used his position with the State of Iowa to retaliate against Dr. Brown and damage Dr. Brown and such retaliation and damage included a retaliation in which Defendant Linder embarked on a campaign to discredit Dr. Brown and convince others Dr. Brown was not professionally and ethically qualified, which was false.

69.     Defendant Linder retaliatory use of his employment with the State of Iowa was especially concerning because of the likelihood of creating interdepartmental conflict within the medical school and law school at the University of Iowa.

70.     Defendant Linder's retaliatory conduct was intended to, and did in fact, chill Dr. Brown's freedom of expression and speech protected by the United States Constitution.

71.     Defendant Linder's retaliatory conduct would chill a reasonable person ordinary firmness from exercising his or her rights protected by the First Amendment of the United States Constitution.

72.     Defendant Linder's retaliatory conduct was so severe and pervasive that concern was expressed within the University of Iowa College of Medicine about Dr. Brown's personal safety in view of Defendant Linder's retaliatory conduct.

73.     Dr. Kreder, for example, told Dr. Brown that, based on Defendant's Linder's retaliatory comments and conduct directed at Dr. Brown, Dr. Kreder was concerned for Dr. Brown's personal safety.

74.    Dr. Kreder voiced his concerns for Dr. Brown's personal safety, asked Dr. Brown if he owned a firearm, and discussed with Dr. Brown measures to enhance Dr. Brown's personal safety.

75.    Dr. Brown purchased a firearm for personal protection.

76.    Dr. Kreder also recommended that Dr. Brown seek legal counsel and take legal action in view of Defendant Linder's conduct.

77.    Dr. Brown asked for a background check to be performed on Defendant Linder.

78.    Defendant Linder's retaliatory conduct was so severe and pervasive that a University of Iowa attorney familiar with the situation stated to Dr. Brown that Defendant Linder "is harassing the shit out of you [Dr. Brown]" and, like Dr. Kreder, recommended that Dr. Brown hire an attorney.

79.    Defendant Linder's retaliatory conduct was so severe and pervasive that Dr. Brown's spouse repetitively voiced concerns about her personal safety and the personal safety of Dr. Brown and their children, particularly the two children living in Iowa City.

80.    Dr. Brown's children have asked what Defendant Linder looks like and were very upset and troubled with Defendant Linder's conduct.

81.    Defendant Linder's retaliatory conduct was so severe and pervasive that Dr. Brown's spouse felt unsafe and purchased a dog for protection.

82.    Defendant Linder's conduct was repeated and continuous.

83.     Defendant Linder's retaliatory conduct caused Dr. Brown and his family to suffer severe emotional and psychological distress, which manifested into physical injury.

84.     The statements were harmful to Dr. Brown's professional reputation.

**COUNT I**
**42 U.S.C. SECTION 1983**
**FIRST AMENDMENT RETALIATION**
**(Against Defendant Linder, Individually)**

85.     Dr. Brown repleads all allegations asserted in all paragraphs as if fully set forth herein.

86.     Dr. Brown's sworn testimony in a legal proceeding is protected speech under the First Amendment to the United States Constitution as made applicable to the State of Iowa by the Due Process Clause of the Fourteenth Amendment.

87.     Defendant Linder, in his individual and official capacities while acting within the scope of his employment with the State of Iowa, took adverse action against Dr. Brown for his participation in speech, and such retaliation included but is not limited to the following:

   a.  Harassment of Dr. Brown;

   b.  Making multiple false statements directly and by implication of and concerning Dr. Brown to one or more third-persons concerning Dr. Brown's medical expertise, qualifications to testify as an expert in urology, ethics, professional abilities, and testimony in the Swift case;

   c.  Making multiple misleading statements directly and by implication of and concerning Dr. Brown to one or more third-persons concerning Dr.

13

Brown's medical expertise, qualifications to testify as an expert in urology, ethics, professional abilities, and testimony in the Swift case; and

d.  Making multiple other statements of and concerning Dr. Brown to one or more third-persons that were intended to deter Dr. Brown from engaging in protected free speech, including but not limited to testifying truthfully under oath in a legal proceeding.

88.  Defendant Linder's retaliatory conduct would chill a person or ordinary firmness from exercising his or her free speech rights.

89.  Dr. Brown's sworn testimony in the Swift matter was a substantial and motivating factor behind Defendant Lindor's adverse and retaliatory conduct.

90.  Defendant Linder's conduct was done in retaliation for Dr. Brown's engagement in protected speech.

91.  Defendant Linder's retaliatory conduct was the proximate cause of the damages sustained by Dr. Brown, including but not limited to economic damages, including lost profits and wages; severe emotional and psychological distress, which manifested into physical injury; and harm to Dr. Brown's professional reputation.

92.  Defendant Linder's false statements were made intentionally, maliciously, and with reckless disregard of Dr. Brown's rights.

**WHEREFORE**, Dr. Brown prays for judgment against the Defendant in an amount which will fully and fairly compensate him for his damages he sustained, attorneys' fees, costs, punitive and exemplary damages, and further relief which the Court deems appropriate in the interest of justice.

14

## COUNT II
## DEFAMATION BY IMPLICATION
### (Against Defendant Linder, Individually)

93.     Dr. Brown repleads all allegations asserted in all paragraphs as if fully set forth herein.

94.     Dr. Brown alternatively asserts a claim of defamation by implication to the extent Defendant Linder's conduct was not within the scope of his employment with the State of Iowa.

95.     Before Dr. Brown filed this lawsuit, Dr. Brown, though counsel, sent Defendant Linder a cease-and-desist letter pertaining to defamatory statements concerning Dr. Brown.

96.     Upon receiving the cease-and-desist letter, Defendant Linder asked attorneys employed by University of Iowa to represent and defend him in this dispute with Dr. Brown.

97.     The State of Iowa, through the department of legal affairs at the University of Iowa, stated it would not represent Defendant Linder because it was determined that Defendant Linder acted in an individual capacity and outside the scope of his employment as a University of Iowa professor when he disseminated the allegedly false and defamatory statements about Dr. Brown.

98.     Defendant Linder made statements of and concerning Dr. Brown to one or more third persons, including statements published in newspapers across Eastern Iowa that were false by implication, including the following:

a. That Dr. Brown testified about the OSHA standard requiring employers to provide prompt access to bathroom facilities;

15

b.  That Dr. Brown would agree to unleash terrible consequences for 100 million workers for his own financial gain;

c.  That physicians like Dr. Brown who testify truthfully are unethical and have a conflict of interest when called to testify as an expert by a party against whom the State of Iowa;

d.  That Dr. Brown was not qualified to testify as an expert in the Swift case;

e.  That Dr. Brown is an expert who was not impartial;

f.  That Dr. Brown was willing to deceive factfinders by offering and, if necessary, testify, to whatever expert opinion that advances the hiring attorney's case theory;

g.  That Dr. Brown lacked the qualifications necessary to testify as an expert in urology in the Swift case; and

h.  That Dr. Brown subordinated ethics for his own financial gain.

99.  Defendant Linder's false statements were made intentionally, maliciously, and with reckless disregard of Dr. Brown's rights.

100.  For purposes of the allegations contained in this Count, Defendant Linder's false statements were made while he was acting outside the scope of his employment with the University of Iowa.

101.  Plaintiff was defamed and damaged in name and reputation.

102.  Accordingly, Defendant Linder is liable for the damages suffered by Dr. Brown.

**WHEREFORE**, Dr. Brown prays for judgment against the Defendant in an amount which will fully and fairly compensate him for his damages he sustained, attorneys' fees, costs, punitive and exemplary damages, and further relief which the Court deems appropriate in the interest of justice.

**COUNT III**
**DEFAMATION PER SE**
**(Against Defendant Linder, Individually)**

103.   Dr. Brown repleads all allegations asserted in all paragraphs as if fully set forth herein.

104.   Dr. Brown alternatively asserts a claim of defamation per se to the extent Defendant Linder's conduct was not within the scope of his employment with the State of Iowa.

105.   Defendant Linder made multiple statements about Dr. Brown while to one or more third parties regarding Dr. Brown's business and professional competence, ethics, and medical expertise.

106.   The statements were false.

107.   For purposes of the allegations contained in this Count, Defendant Linder's false statements were made while he was acting outside the scope of his employment with the University of Iowa.

108.   The statements injured Dr. Brown's business and professional reputation.

109.   The false statements were made intentionally, maliciously, and with reckless disregard of Dr. Brown's rights.

110.    Accordingly, Defendant Linder is liable for the damages suffered by Brown.

**WHEREFORE**, Dr. Brown prays for judgment against the Defendant in an amount which will fully and fairly compensate him for his damages he sustained, attorneys' fees, costs, punitive and exemplary damages, and further relief which the Court deems appropriate in the interest of justice.

**COUNT IV**
**DEFAMATION**
**(Against Defendant Linder, Individually)**

111.    Dr. Brown repleads all allegations asserted in all paragraphs as if fully set forth herein.

112.    Dr. Brown alternatively asserts a claim of defamation to the extent Defendant Linder's conduct was not within the scope of his employment with the State of Iowa.

113.    Defendant Linder repeatedly made statements of and concerning Dr. Brown to one or more third persons.

114.    The statements were false.

115.    For purposes of the allegations contained in this Count, Defendant Linder's false statements were made while he was acting outside the scope of his employment with the University of Iowa.

116.    The statements caused material harm to Dr. Brown.

117.    The false statements were made intentionally, maliciously, and with reckless disregard of Dr. Brown's rights.

118.   Accordingly, Defendant Linder is liable for the damages suffered by Dr. Brown.

**WHEREFORE**, Dr. Brown prays for judgment against the Defendant in an amount which will fully and fairly compensate him for his damages he sustained, attorneys' fees, costs, punitive and exemplary damages, and further relief which the Court deems appropriate in the interest of justice.

<u>COUNT V</u>
**FALSE LIGHT INVASION OF PRIVACY**
**(Against Defendant Linder, Individually)**

119.   Dr. Brown repleads all allegations asserted in all paragraphs as if fully set forth herein.

120.   Dr. Brown alternatively asserts a claim of false light invasion of privacy to the extent Defendant Linder's conduct was not within the scope of his employment with the State of Iowa.

121.   Defendant Linder made statements of and concerning Dr. Brown to one or more third persons.

122.   The statements and published information portrayed Dr. Brown in a false and misleading light.

123.   For purposes of the allegations contained in this Count, Defendant Linder's false statements were made while he was acting outside the scope of his employment with the University of Iowa.

124.   The information was highly offensive to a reasonable person.

125.   Defendant Linder published the information with reckless disregard to its offensiveness.

126.    The publications injured Dr. Brown's professional reputation.

127.    Defendant Linder's statements were the proximate cause of the damages sustained by Dr. Brown.

**WHEREFORE**, Dr. Brown prays for judgment against the Defendant in an amount which will fully and fairly compensate him for his damages he sustained, attorneys' fees, costs, punitive and exemplary damages, and further relief which the Court deems appropriate in the interest of justice.

COUNT VI
INJUNCTIVE RELIEF
(Against Defendant Linder in his Individual and Official Capacities)

128.    Dr. Brown repleads all allegations asserted in all paragraphs as if fully set forth herein.

129.    Defendant Linder in performing the conduct complained of herein acted willfully and with intent to injure Dr. Brown.

130.    Defendant Linder threatens so, and unless restrained, will continue to engage in the wrongful and tortious acts described herein.

131.    Accordingly, Dr. Brown seeks injunctive relief against Defendant Linder in his official and individual capacities for his misconduct.

**WHEREFORE**, Dr. Brown prays for judgment against the Defendant permanently enjoining him from engaging in the wrongful and tortious acts described herein, and further relief which the Court deems appropriate in the interest of justice.

**JURY DEMAND**

Dr. Brown requests a trial by jury on all issues properly triable thereto.

20

Respectfully submitted,

/s/ *Scott M. Wadding*

Scott M. Wadding AT0010447
SEASE & WADDING
104 SW Fourth Street, Suite A
Des Moines, Iowa 50309
Telephone: (515) 883-2222
Facsimile: (515) 883-2233
swadding@seasewadding.com
ATTORNEY FOR PLAINTIFF

## Certificate of Service

I hereby certify that on August 23, 2021, I presented the foregoing document to the Clerk of Court for filing and uploading to the ECF system, which will send notification to the following ECF system participants:

Christopher J. Deist
Samuel P. Langholz
Ryan Sheahan
Assistant Attorneys General
Iowa Department of Justice
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone: (515) 281-5164
Fax: (515) 281-4209
christopher.deist@ag.iowa.gov
sam.langholz@ag.iowa.gov
ryan.sheahan@ag.iowa.gov
ATTORNEYS FOR DEFENDANT

/s/ *Scott M. Wadding*