IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JAMES BROWN, M.D., | Case No. 3:21-cv-00065-SMR-HCA |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION TO DISMISS |
| v. | |
| MARC LINDER, in his individual and official capacities, | |
| Defendant. | |

On June 16, 2021, Plaintiff James Brown filed a lawsuit against Defendant Marc Linder in the Iowa District Court for Johnson County. [ECF No. 3]. In the complaint, Plaintiff asserts that Defendant retaliated against him for exercising his First Amendment rights. *Id.* Shortly after, Defendant removed the case to federal court. [ECF No. 1]. Plaintiff amended his complaint, [ECF No. 5], and Defendant filed a 12(b)(6) Motion to Dismiss. [ECF No. 7]. For the reasons below, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

I.  FACTUAL BACKGROUND[1]

*A. Swift Proceedings*

Plaintiff James Brown is a board-certified urologist with the University of Iowa Hospitals and Clinics ("UIHC"). [ECF No. 5 ¶ 7]. On an unspecified date, Swift Pork Company ("Swift") asked Plaintiff to provide expert testimony in a case pertaining to Swift's restroom use policy for employees and whether their policies complied with the regulations of the Occupational Safety

---

[1] The facts come from the Amended Complaint, [ECF No. 5], and are assumed true for the purposes of a Motion to Dismiss. *See Brown v. Medtronic*, Inc., 628 F.3d 451, 459 (8th Cir. 2010).

1

and Health Administration ("OSHA"). *Id.* ¶ 16. Specifically, Swift asked Plaintiff to provide testimony on "whether Swift's policies on restroom breaks exposed employees to potential adverse health effects based on the medical evidence." *Id.* ¶ 19. The Labor Commissioner for the State of Iowa did not object to Plaintiff serving as one of Swift's expert witnesses and stipulated to his qualifications. *Id.* ¶ 29. Likewise, the Administrative Law Judge (ALJ) qualified Plaintiff as an expert witness on all matters related to urology. *Id.* ¶ 30.

At the hearing, Plaintiff testified on the medical issue of whether Swift's bathroom policy would increase the likelihood of its employees becoming sick at work, as charged by the Labor Commissioner. [ECF No. 5 ¶ 33]. Plaintiff did not testify on whether Swift violated the OSHA standard at issue. *Id.* ¶ 31. Dr. Brown "had no opinion as to whether or not OSHA's interpretation was appropriate." *Id.* ¶ 32. The ALJ found "Swift's implementation of its restroom use policy did not unreasonably restrict employee access to restrooms," which meant the Labor Commissioner failed to establish a violation of OSHA's sanitation standard. *Id.* ¶ 34. The Employment Appeal Board affirmed the ALJ's decision on February 16, 2018. *Id.* ¶ 35.

### B. *Defendant's Conduct*

Defendant engaged with Plaintiff before, during, and after the hearing at which he testified. *See generally* [ECF No. 5]. The day before the hearing, Defendant filed a complaint against Plaintiff with Dr. Karl Kreder, the head of the Department of Urology at UIHC. *Id.* ¶ 23. Defendant then sent a series of emails to Dr. Kreder, one of which stated that Plaintiff created a "self-confessed money-driven report, deposition, and hearing testimony on behalf of an Iowa (and Federal) OSHA-cited employer." *Id.* ¶ 24. On the day of the administrative hearing, Defendant showed up wearing a t-shirt that said, "People Over Profits." *Id.* ¶ 26.

Over a year after the end of the administrative proceedings, Defendant was quoted in news articles criticizing Plaintiff. [ECF No. 5 ¶¶ 40; 43]. On July 28, 2019, Defendant provided comments about Plaintiff to the Waterloo-Cedar Falls Courier and Cedar Rapids Gazette. *Id.* ¶ 40. In the articles, Defendant asserted that Plaintiff's testimony on "a standard that affects 100 million people . . . could have unleashed or helped to unleash terrible consequences for workers of Iowa." *Id.* These articles identified the speaker as "Marc Linder, a UI law professor whose focus is on labor law." *Id.* ¶ 41.

On June 25, 2020, Defendant published an article in The Daily Iowan criticizing the testimony of Dr. Brown. [ECF No. 5 ¶ 43]. In this article, he wrote that Plaintiff is a "University of Iowa Hospitals & Clinics physician" who "has never even published a single scholarly article on urinary incontinence frequency/urgency." *Id.* ¶ 50. The article asserts Plaintiff violated an "unambiguous" law on ethics and conflicts of interest for state employees who testify as expert witnesses. *Id.* ¶ 47. Finally, Defendant portrays Plaintiff as a "hired gun for private-profit making defendants in cases prosecuted by state agencies." *Id.* ¶ 53.

Plaintiff alleges three other instances where Defendant made unflattering characterizations of his testimony. [ECF No. 5 ¶ 55]. First, Plaintiff claims Defendant stated, "Dr. Brown wanted 'to Make America Great Again by helping his customer, JBS.'" *Id.* ¶ 55(a). Second, Plaintiff maintains Defendant said, "Dr. Brown wanted to make 'workers urinate less and kill animals more.'" *Id.* ¶ 55(b). Finally, Plaintiff asserts Defendant commented "maybe that view wasn't his . . . but merely the only one that JBS would pay him $500 / $600 an hour" to say. *Id.* ¶ 55(c).

## II.   PROCEDURAL BACKGROUND

On June 16, 2021, Plaintiff filed this lawsuit against Defendant. [ECF No. 3]. In the Initial Complaint, Plaintiff brings five claims against Defendant. *Id.* Plaintiff's first claim is that

Defendant retaliated against him for testifying in a hearing, contrary to the First Amendment of the United States Constitution. *Id.* at 9. Plaintiff's second, third, and fourth counts all allege that Defendant's statements on his ethical decisions and expertise defamed him. *Id.* at 11; 13; 14. Finally, Plaintiff maintains that Defendant's statements portrayed him in a false light. *Id.* at 15.

On August 2, 2021, Defendant removed the case from state court to federal court. [ECF No. 1]. One week later, Defendant filed a Federal Rule 12(b)(6) Motion to Dismiss, asking the Court to dismiss the entirety of Plaintiff's Complaint. [ECF No. 4]. Defendant pleads the affirmative defense of qualified immunity as well. *Id.* at 2–3. On August 23, 2021, Plaintiff amended his complaint to add a request for injunctive relief. *See generally* [ECF No. 5]. Two weeks later, Defendant filed a Motion to Dismiss the Amended Complaint. *See* [ECF No. 7]. Plaintiff filed his resistance and Defendant filed a reply. [ECF Nos. 8; 13]. For the reasons below, Defendant's Motion is GRANTED in part and DENIED in part.

### III.   GOVERNING LAW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Peitoso, Inc. v. Republic Servs. Inc.*, 4 F.4th 620, 622 (8th Cir. 2021) (quoting *Glick v. W. Power Sports, Inc.,* 944 F.3d 714, 717 (8th Cir. 2019)). "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked' assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*,

621 F.3d 816, 818 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.*

## IV. ANALYSIS

### A. *First Amendment Retaliation*

Count I of Plaintiff's Complaint raises a First Amendment retaliation claim brought under 42 U.S.C. § 1983.[2] [ECF No. 5 at 13–14]. Specifically, Plaintiff argues that his sworn testimony in a legal proceeding is protected speech and Defendant's responses to his testimony, which include making false and misleading statements, is retaliation proscribed by the First Amendment. *Id.* Defendant responds that this conduct does not constitute First Amendment retaliation because it was not done under the color of law and it would not chill a person of ordinary firmness from continuing their conduct. [ECF No. 7-1 at 6].

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To bring a claim of First Amendment retaliation, a plaintiff must prove: (1) he was engaged in a protected activity; (2) defendant took adverse action against him that would chill a person of ordinary firmness from continuing the activity; (3) the adverse action was motivated at least in part by the exercise of the protected activity. *See Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004).

---

[2] Section 1983 provides, in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Ultimately, Plaintiff has not pled facts that give rise to a possibility that Defendant acted under the color of state law. Nor has Plaintiff pled facts that show Defendant acted in a way that would chill a person of ordinary firmness from engaging in or continuing to engage in the protected activity. Accordingly, Defendant's Motion to Dismiss Count I is GRANTED.

1. Under Color of State Law

To hold a person liable under 42 U.S.C. § 1983, a Plaintiff must show that Defendant acted "under color of state law." *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). This element is meant to "exclude[] from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Doe v. Washington Univ.*, 434 F. Supp. 3d 735, 746 (E.D. Mo. 2020) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

A state employee is not acting under the color of law for § 1983 purposes solely by virtue of being a public employee. *Polk Cnty. v. Dodson*, 454 U.S. 312, 321 (1981). "A public employee acts under color of law when he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014). "It is clear that under 'color' of law means under 'pretense' law." *Roe*, 128 F.3d at 1216 (citation omitted). "In order to determine if a public employee . . . is acting under color of state law, the court must examine the nature of the officer's conduct and its relationship to the performance of the officer's statutory duties." *Schultzen v. Woodbury Cent. Comm. Sch. Dist.*, 250 F. Supp. 2d 1047, 1057 (N.D. Iowa 2003). "In the absence of such a relationship, the officer cannot be acting under color of state law." *Id.* Finally, "[a]cts of officers in the ambit of their personal pursuits are plainly excluded." *Roe*, 128 F.3d at 1216.

Plaintiff's argument that Defendant acted under color of law is unconvincing for two separate reasons. First, Plaintiff's pleadings are formulaic and conclusory, alleging that Defendant

acted under the color of state law without supporting facts. *See* [ECF No. 5]. The Amended Complaint alleges "Defendant Linder was acting under color of law, custom, and / or usage of the State of Iowa." *Id.* ¶ 10. It maintains that "Defendant Linder possessed state authority and purported to act under that authority when he retaliated against Dr. Brown." *Id.* ¶ 58. The Amended Complaint further claims that "Defendant Linder used the instrumentalities and resources of the State of Iowa to facilitate his retaliatory conduct." *Id.* ¶ 60. Finally, Plaintiff states "Defendant Linder cloaked his retaliatory conduct under color of law." *Id.* ¶ 64.

None of these assertions are adorned with supporting facts on how Defendant's conduct was related to the execution of his statutory duties. The Amended Complaint is not supported by any facts defining the scope of authority provided to Defendant by the State of Iowa or how he used that authority when responding to Plaintiff. Likewise, the Amended Complaint does not identify any specific instrumentalities and resources that Defendant allegedly used against Plaintiff. *Id.* There is no explanation on how Defendant cloaked his retaliatory conduct under the color of state law. *Id.* In other words, the allegations in the Amended Complaint are conclusory.

Second, the specific facts pled by Plaintiff do not give rise to a plausible argument that Defendant was acting under the color of state law. *See generally* [ECF No. 5]. Plaintiff pleads that Defendant was acting under the color of state law because he was identified as "Marc Linder, a UI law professor whose focus is on labor law" in both articles criticizing him. *Id.* ¶¶ 41; 45. Plaintiff argues this fact demonstrates Defendant was acting under the color of state law because Defendant put himself forward as the employee of a public university. [ECF No. 8 at 8–9]; *see also Johnson v. Phillips*, 664 F.3d 232, 239–240 (8th Cir. 2011).

However, Plaintiff again does not plead the facts necessary to bring raise this issue from possible to plausible. *See Iqbal,* 556 U.S. at 678. He would need additional facts on how Plaintiff

used his position, such as using school funds, asking students to join the protest, etc., to act against him to meet this burden. Merely alleging that a party listed their title in a public forum is not enough to plausibly state that a person was acting under the color of law instead of acting in their personal capacity. Thus, the Amended Complaint cannot survive this Motion to Dismiss.

### 2. Chill a Person of Ordinary Firmness

"The ordinary-firmness test . . . is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003) (citation omitted). "The 'ordinary-firmness' test is an 'objective one, not subjective.'" *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (quoting *Garcia*, 348 F.3d at 729)). The question is not whether the person himself was deterred, but "[w]hat would a person of 'ordinary firmness' have done in reaction to the [adverse action]?" *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (alteration in original). A defendant making harassing, derogatory, and humiliating comments is "insufficient to deter a person of ordinary firmness from continuing to speak out." *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002). However, a state actor using "the punitive machinery of government" to inflict "concrete consequences" is sufficient to chill a person of ordinary firmness from continuing their conduct. *Garcia*, 348 F.3d at 729.

Plaintiff pleads numerous instances of Defendant engaging in conduct that portrays him in an unflattering light. [ECF No. 5 ¶¶ 23–26; 40–43]. Defendant allegedly filed a complaint against Plaintiff with his supervisor right before the testimony. *Id.* ¶ 23. Likewise, Defendant wore a shirt saying "People Before Profits" to the hearing at which Plaintiff testified. *Id.* ¶ 26. Defendant was interviewed for an article criticizing Plaintiff more than a year after the testimony. *Id.* ¶ 40. Finally, Defendant wrote a piece in a college newspaper criticizing Plaintiff. *Id.* ¶ 43.

These behaviors would not deter a person of ordinary firmness from continuing to speak out for two reasons. First, the conduct is markedly less severe than other instances where the United States Court of Appeals for the Eighth Circuit found conduct insufficient to chill a person of ordinary firmness. *See Naucke*, 284 F.3d at 928. In *Naucke*, the Defendants publicly scolded Plaintiff at City Council meetings, called her names in public, and circulated a letter suggesting other men were the father of one of her children. *Id.* at 927. Despite describing the conduct as "offensive, unprofessional, and inappropriate," the Eighth Circuit held that these were insufficient to qualify as conduct that would chill a person of ordinary firmness. *Id.* at 928. Based on the pleadings, Defendant's conduct is significantly less embarrassing and offensive than in *Naucke*.

Second, Plaintiff does not plead facts to plausibly suggest that Defendant used "the punitive machinery of government" to inflict "concrete consequences" on him. *See generally* [ECF No. 5]. The action that comes the closest is when Plaintiff filed a complaint with Dr. Kreder, the head of the Department of Urology at UIHC. [ECF No. 5 ¶ 21]. However, there are no allegations that Dr. Kreder was part of government machinery or that Dr. Kreder could impose or imposed concrete consequences on Plaintiff. *See* [ECF No. 5]. Defendant's conduct in the other circumstances – wearing a shirt at the hearing, criticizing Plaintiff in an interview, and publishing an article critical of Plaintiff – certainly do not constitute concrete consequences under *Garcia*.

Based on the above reasons, Defendant's Motion to Dismiss Count I of the Amended Complaint is GRANTED.

### B.  Remaining State Law Claims

"[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting 28 U.S.C. § 1367(a),(c)) (alterations in original). "A district court's

decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio., Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). "In exercising its discretion, the district court should consider factors such as judicial economy, convenience, fairness, and comity." *Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 933 (8th Cir. 2013); *see also Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016). Further, "where resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction." *Saldi v. Am. Nat'l. Bank*, 8:16-CV-61, 2017 WL 1097059, at *5 (D. Neb. Mar. 23, 2017) (citing *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009)).

Plaintiff's remaining claims of defamation and false light are based entirely on state law. Likewise, this case is in its nascent stages because no answer has been filed and no deadlines have been scheduled. For these reasons, the Court declines to exercise supplemental jurisdiction.

## V.   CONCLUSION

Defendant's Motion to Dismiss, [ECF No. 13], is GRANTED on Plaintiff's First Amendment Retaliation claim. Defendant's Motion to Dismiss is DENIED on Counts II through VI. The remaining claims are remanded to the Iowa District Court for Johnson County.

IT IS SO ORDERED.

Dated this 26th day of January, 2022

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT